Filed 6/7/16  Duarte v. Specialized Loan Servicing CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA JUANITA DUARTE, | |
| Plaintiff and Appellant, | G050625, G050677 |
| v. | (Super. Ct. No. 30-2014-00697680) |
| SPECIALIZED LOAN SERVICING LLC et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

Law Offices of Hector C. Perez and Hector C. Perez for Plaintiff and Appellant.

Severson and Werson, Jan T. Chilton and Bernard J. Kornberg for Defendants and Respondents Nationstar Mortgage LLC and Specialized Loan Servicing LLC.

McCarthy & Holthus and Melissa Robbins Coutts for Defendant and Respondent Quality Loan Service Corporation.

*       *       *

Plaintiff Maria Juanita Duarte and her late husband Ernesto refinanced their Costa Mesa home in 2006. Ernesto signed the two notes involved in the refinancing (for $334,000 and $100,000 respectively), but Maria did not. She did, however, sign the two respective deed of trusts corresponding to those two notes, and each of those notes had what we will call a "no personal obligation clause." We reproduce both of those clauses in the margin.[1]

In 2010, Ernesto died. Maria did not keep up the payments required by the refinance. In December 2012, just 12 minutes before a scheduled noon foreclosure, Maria filed for bankruptcy. Indeed, as far as our record reflects, she is *still* the subject of a bankruptcy proceeding. However, in July 2014, the bankruptcy court entered an order abandoning the bankruptcy estate's interest in the property. Maria had filed this state court action to quiet title in the property back in January 2014, but with the July 2014 bankruptcy court order, the state trial court was able to conclude that Maria had standing to pursue this case.

---

[1] From the deed of trust securing the $334,000 loan: "13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

"Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." (Emphasis deleted.)

And from the deed of trust securing the $100,000 line of credit: 13. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender."

2

The essence of her complaint is that in 2010, on Ernesto's death, she took title to her home free and clear of any claims by the refinancing lenders. She specifically noted the presence of the no personal obligation clauses in the two trust deeds. The respondents filed demurrers to Maria's complaint and subsequent first amended complaint. The demurrers were sustained without leave to amend. Judgments for dismissal were entered as to respondents Specialized Loan Service and Nationstar respectively, though about two weeks apart.[2] Maria separately appealed from each, and we consolidated the two appeals on our own motion.[3]

No published California case of which we are aware has squarely faced the question of whether a surviving spouse as surviving joint tenant takes property free and clear of an encumbrance when that surviving joint tenant is the subject of a no personal liability clause in a deed of trust.[4] Three cases, however, shed sufficient light on the issue to allow us to conclude the trial court's judgment was correct:

*People v. Nogarr* (1958) 164 Cal.App.2d 591 (*Nogarr*) was essentially a fight between a widow and her erstwhile in-laws over proceeds from a condemnation action. The widow and her late husband had acquired certain property in 1950 as joint tenants, but separated in 1954. While separated from his wife, the late husband gave his parents a note and deed of trust for about $6,400 on the property. The widow "did not

[2]    The relationship between the three defendants in this case and original refinancing transaction in 2006 is, given the paucity of facts in the complaint and the procedural posture of a demurrer, a bit vague. Maria alleged that respondents Nationstar Mortgage LLC and Specialized Loan Servicing LLC had "lien interests" in her property, while respondent Quality Loan Service Corporation was the trustee on "the" deed of trust in which Nationstar was beneficially interested. The actual trustees on the two deeds of trust attached to and incorporated into the complaint are different entities, but any issues arising out of that discrepancy are not before us.

[3]    This court initially stayed its own proceedings given the pending bankruptcy proceedings. The defendants asked the stay be lifted, but Maria opposed their request. In an order filed April 3, 2015, the presiding justice of this court granted the defendants' motions to lift the stays on the two appeals and consolidated them on this court's own motion.

[4]    We decline to hold that Maria's claims against respondents are barred by res judicata based on a bankruptcy court ruling, which included the joint-tenancy succession issue which Maria raises here, but which was affirmed on appeal to the Ninth Circuit bankruptcy panel on another ground. (See *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1132 [if a reviewing court reviews a judgment predicated on alternative grounds but the reviewing court only decides one of those grounds in affirming the judgment, the non-reviewed ground is not res judicata].)

have knowledge of or give her consent to the execution of this mortgage." (*Id.* at p. 592.) The estranged husband died in 1955, and in 1956 the state commenced a condemnation action. Because of the conflicting claims between the widow and the in-laws, the state paid the fair market value of the property into the court. The trial court gave judgment for the in-laws for the amount of the mortgage (plus interest), but the *Nogarr* court reversed. The appellate court applied the normal mechanics of joint tenancy: When one joint tenant dies, the other joint tenant becomes "sole owner" of the property. (*Id.* at p. 594.) Most of the opinion was taken up with demonstrating that the late husband did not, by mortgaging *his* interest in the property, sever the joint tenancy and destroy the right of survivorship. (See *id.* at pp. 594-598.)

*Hamel v. Gootkin* (1962) 202 Cal.App.2d 27 (*Hamel*) followed a similar pattern, except there the two joint tenants, Maude Duin and George Gootkin, may not have been married to each other. In any event, Maude executed deeds of trust on their property *without* George's "consent." George, in fact, did not find out about the deeds of trust until after Maude's death. In a short opinion basically following *Nogarr*, the *Hamel* court held the property was not subject to the deeds executed by Maude during her lifetime. (*Id.* at pp. 28-29.)

But the result in *Katsivalis v. Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200 (*Katsivalis*) was different. There, a husband and wife owned property in joint tenancy. The wife signed a power of attorney to her husband in June 1972, and that power of attorney was "duly recorded." (*Id.* at p. 207.) The power of attorney specifically gave the husband authority to sign notes and deeds of trust for the wife, and in September 1972, the husband entered into a refinance of the existing loans on their property, signing on the wife's behalf. (*Id.* at pp. 206-207.) After the husband's death, the widow argued she should take the property free and clear of the notes and deeds of trust because she really didn't consent to them – she was "without understanding to make a contract at the time." Her argument, however foundered on the substantial evidence

4

found by the trial court that she was in fact competent and of sound mind at the time. (*Id.* at p. 207.) The appellate court thus affirmed a judgment declaring that the lender had an equitable lien on the property even though the wife was the surviving joint tenant. In the process, *Katsivalis* distinguished *Nogarr* and *Hamel* on the ground that in those cases the encumbrances had been "executed *solely* by the deceased joint tenant," i.e., the survivors had not consented to the encumbrances. (*Id*. at p. 208, italics added.)

We distill a consistent rule of law from these three cases: If the surviving joint tenant consents to the encumbrance, the surviving joint tenant takes the property subject to the loans to which he or she consented. If not, the surviving joint tenant takes the property free and clear of those encumbrances – those encumbrances only affected the deceased joint tenant's interest in the property, and that interest died with him or her.

Maria tries to distinguish *Katsivalis* on the theory that there the widow signed (albeit via a power of attorney) *both* a note and deed of trust, whereas here Maria *only* signed deeds of trust. But Maria makes no argument she did not consent to the 2006 refinance. The deed of trust, in fact, demonstrates she *did* consent to the 2006 refinance. It is further undisputed she and Ernesto lived together until his death in 2010. Thus unlike the victims of the relatively deceitful decedents in *Nogarr* and *Hamel*, Maria presumably benefited from the 2006 refinance, since it resulted in more liquidity for the existing community of her and her late husband. Our conclusion is buttressed by section 910 of the Family Code, cited by the bankruptcy trial judge, which provides the "community estate" shall be "liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the

5

debt." The subject property was clearly part of the community estate of Maria and Ernesto.[5]

The one new wrinkle in this case is the presence of the no personal obligation clauses in the two deeds of trust (quoted in fn. 1, *ante*). Do these clauses somehow allow Maria to simultaneously fail to make the refinance payments *and* take the property as a surviving joint tenant free and clear of the encumbrances imposed by the refinancing?

We think not. The no personal obligation clauses here simply make clear that Maria need not worry about any money judgment against her *personally* if she doesn't keep up the payments. A case from our Supreme Court during the Johnson administration – the *Andrew* Johnson administration – nicely illustrates the difference between a widow's personal liability on a mortgage and a lender's ability to recover against the mortgaged property. In *Brown v. Orr* (1865) 29 Cal. 120, a wife executed, along with her then-living husband, a note and mortgage. After the husband's death, the lender sought to foreclose the mortgage *and als*o have a "personal judgment" against the wife. (*Id*. at p. 122.) The wife demurred on the theory that the facts could not possibly state liability for a "personal" judgment against her because – remember this was 1865 – when she executed the note she was married and, as the high court put it, "therefore legally incompetent to make the contract." (*Ibid.*) The trial court agreed, and the Supreme Court agreed with the trial court. The *Brown* court said the lender could have no "personal judgment" against the wife even though, if the debt had not been paid by the late husband, he could still recover on the mortgage. (*Id*. at p. 122.)

---

[5] A simple application of Family Code section 910 in a vacuum might in fact lead to the conclusion that the property was available for the satisfaction of the refinance debt *even if* Maria hadn't consented to the 2006 transaction. However, we need not tackle in this case any arguable conflict between the common law rule laid down in *Nogarr* and *Hamel* and the statutory rule in the Family Code. Maria clearly did consent to the refinance, and presumably benefited from it.

We merely add that construing the no personal obligation clauses of the two deeds of trust to contemplate the forfeiture of the lenders' ability to recover against the property in the event of the death of one of two married joint tenants would result in an indefensible windfall. The whole point of the refinancing from the lenders' point of view was to secure their interest in the property, not to create a marital tontine. Outliving her husband does not entitle Maria to the property as a death benefit.

The judgment is affirmed. Respondents shall recover their costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

7